ATTORNEYS FOR APPELLANT
Philip R. Skodinski
South Bend, Indiana

ATTORNEYS FOR APPELLEE
Gregory F. Zoeller
Attorney General of Indiana

Karl M. Scharnberg
Deputy Attorney General
Indianapolis, Indiana

# In the
# Indiana Supreme Court



FILED
Aug 13 2014, 11:22 am

CLERK
of the supreme court,
court of appeals and
tax court

No. 71S04-1310-CR-705

DOUGLAS A. GUILMETTE,

*Appellant (Defendant below),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff below).*

Appeal from the St. Joseph Superior Court, No. 71D08-1012-MR-11
The Honorable Jane Woodward Miller, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 71A04-1205-CR-250

**August 13, 2014**

**Massa, Justice.**

This appeal presents us with a single question: must police have a warrant before subjecting lawfully seized evidence to laboratory testing if that evidence is unrelated to the crime for which the defendant is in custody? We think not, and thus we affirm the trial court.

**Facts and Procedural History**

On the evening of September 13, 2010, Doug Guilmette and his co-worker Greg Piechocki were visiting the home of their employer, Kevin Rieder. Around 12:30 a.m., Rieder took a sleeping pill and went to sleep in another room with the door closed and the fan on high. Sometime later, Piechocki went to sleep in the second bedroom. During the early morning hours of September 14, Guilmette entered that bedroom and stole Piechocki's car keys and $280 in cash. Guilmette then drove Piechocki's car to Wal-Mart and Meijer, where he shoplifted several items of merchandise. He returned to Rieder's home around 7:00 a.m., parked Piechocki's car on the street in front of the house, and left again.

That afternoon, Rieder discovered Piechocki's body in the spare bedroom. A forensic pathologist later determined Piechocki suffered at least ten blows to his head, causing multiple skull fractures, and at least fifteen blows to his body—all consistent with being hit by a baseball bat.

Police questioned Guilmette, but he initially denied any involvement in the murder and claimed he rode a bicycle to Wal-Mart and Meijer. At a second interview, however, after police confronted Guilmette with surveillance video showing him driving Piechocki's car at both Wal-Mart and Meijer, Guilmette admitted he took Piechocki's keys and money. At the conclusion of that interview, police arrested Guilmette on two counts of theft. They also seized his clothing, including his shoes, in accordance with their standard booking protocols. When police inspected Guilmette's clothing, they found what appeared to be blood under the laces of his left shoe. Testing revealed the presence of Piechocki's DNA in that blood.

The State charged Guilmette with four felonies: one count of murder, two counts of theft, and one count of habitual offender status. Guilmette moved to suppress the DNA evidence found on his shoe, arguing the police should have obtained a separate warrant before subjecting the shoe to testing. After a hearing, the trial court denied that motion. Guilmette was convicted on all charges, and the trial court sentenced him to ninety-two years of imprisonment.

Guilmette appealed, arguing (1) the evidence was insufficient to support his conviction, (2) the trial court erred by giving the State's tendered instruction on accessory liability, and (3) the trial court erred by denying his motion to suppress the DNA evidence found on his shoe. In a published opinion, a panel of our Court of Appeals affirmed the trial court. Guilmette v. State, 986 N.E.2d 335, 343 (Ind. Ct. App. 2013). As to the DNA evidence from Guilmette's shoe, the panel stated it should not have been admitted but found the error harmless because "the DNA evidence from the shoe was not the strongest evidence of guilt" and four separate and independent witnesses testified Guilmette had confessed the crime to them. Id. at 341.

We granted transfer, thereby vacating the opinion below. Guilmette v. State, 996 N.E.2d 327 (Ind. 2013) (table); Ind. Appellate Rule 58(A).

**Standard of Review**

As a procedural matter, Guilmette contends the trial court should have granted his motion to suppress the DNA evidence. But because his case proceeded to trial where he renewed his objection to the admission of that evidence, his appeal is better framed as a request to review the trial court's ruling on its admissibility. Clark v. State, 994 N.E.2d 252, 259 (Ind. 2013) ("Direct review of the denial of a motion to suppress is only proper when the defendant files an interlocutory appeal.").[1]

---

[1] The difference between the standard of review we apply to the trial court's ruling on a motion to suppress evidence and the standard of review we apply to the trial court's ruling on the admissibility of evidence at trial lies in the facts the trial court can consider when making its decision. Clark, 994 N.E.2d at 259 n.9. If the foundational evidence at trial is not the same as that presented at the suppression hearing, the trial court must make its decision based upon trial evidence and may consider hearing evidence only if it does not conflict with trial evidence. Id. (citing Kelley v. State, 825 N.E.2d 420, 426 (Ind. Ct. App. 2005)). But the trial court should consider any hearing evidence that is favorable to the defendant and uncontradicted by trial evidence. Id. (citing Kelley, 825 N.E.2d at 426). In this particular case, the distinction is largely

The trial court has broad discretion to rule on the admissibility of evidence. Id. at 259–60. We review its rulings "for abuse of that discretion and reverse only when admission is clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights." Id. But when an appellant's challenge to such a ruling is predicated on an argument that impugns the constitutionality of the search or seizure of the evidence, it raises a question of law, and we consider that question de novo. Kelly v. State, 997 N.E.2d 1045, 1050 (Ind. 2013).

**The Trial Court Did Not Err by Admitting the DNA from Guilmette's Shoe Into Evidence Against Him.**

Guilmette argues the admission of the DNA evidence violated Article 1, Section 11 of our Indiana Constitution because the police arrested him for one crime (theft) but seized his shoe to search for evidence of a different crime (murder).[2] Thus, Guilmette concludes, the DNA test was

---

irrelevant; when the State sought to admit the DNA from the shoe into evidence against Guilmette at trial, Guilmette's counsel stated "Just to be consistent with my motion to suppress, I'll object[ ]," and the court replied, "All right. For the reasons that I outlined at that hearing, I am overruling that objection." Tr. at 81.

[2] Guilmette did not include his Motion to Suppress in his Appellant's Appendix, and the State argues he thereby waived the suppression issue for our review. Our Appellate Rules say otherwise, however; "failure to include any item in an Appendix shall not waive any issue or argument." Ind. Appellate Rule 49(B). And as we explained above, Guilmette's appeal is properly framed not as a challenge to the trial court's denial of his pre-trial motion to suppress the DNA but as a challenge to the trial court's decision to admit the DNA into evidence against him at trial.

Nevertheless, we remind counsel that the Appendix must include "the Clerk's Record," Ind. Appellate Rule 50(B)(1)(a), which comprises "the Chronological Case Summary (CCS) and all papers, pleadings, documents, orders, judgments, and other materials *filed in the trial court* or Administrative Agency or listed in the CCS." Ind. Appellate Rule 2(E) (emphasis added). What is more, before the final reply brief is filed, counsel has an opportunity to remedy any inadvertent omission by filing a supplemental Appendix without leave of court. Ind. Appellate Rule 49(A). We appreciate counsel's inclusion of the Motion to Suppress as an exhibit to his Response to the State's Petition for Rehearing in the Court of Appeals, but we also encourage all parties to comply with our Appellate Rules so as to facilitate our thorough review of the case before us.

not a valid search incident to arrest, and the police should have had a warrant before performing it. We disagree.

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.

Ind. Const. art. 1, § 11. When determining whether a search comports with this provision, we evaluate "the reasonableness of the police conduct under the totality of the circumstances." Litchfield v. State, 824 N.E.2d 356, 359 (Ind. 2005). In that evaluation, we consider "1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs," as well as any other relevant factors. Id. at 361. We have said before "that the police can search without a warrant if it is incident to a valid arrest," Sears v. State, 668 N.E.2d 662, 666 (Ind. 1996), and Guilmette does not here challenge the validity of his arrest.

Although the admissibility of the DNA evidence under Section 11 is a question of first impression, the admissibility of that same evidence under the federal Fourth Amendment is well-established. In U.S. v. Edwards, 415 U.S. 800 (1974), the defendant was charged with attempting to break into a Post Office. Id. at 801. After police investigated the crime scene and found loosened paint chips at the point of entry, they seized the defendant's clothes, tested the debris on them, and matched it to a sample from the crime scene. Id. at 801–02. The results of that test were admitted into evidence against the defendant at trial, over his objection that police seized his clothes without a warrant in violation of his Fourth Amendment rights, and he was convicted. Id. at 802. The defendant successfully appealed, but the Supreme Court granted certiorari and held the search was constitutionally permissible. Id. The Court noted "searches and seizures that could be made on the spot at the time of arrest may legally be conducted later when the accused arrives at the place of detention," and added: "Nor is there any doubt that clothing or other belongings may be seized upon arrival of the accused at the place of detention and later subjected to laboratory analysis or that the test results are admissible at trial." Id. at 803–04. It concluded: "Indeed, it is

difficult to perceive what is *unreasonable* about the police's examining and holding as evidence those personal effects of the accused that they already have in their lawful custody as the result of a lawful arrest." Id. at 806 (emphasis added); see also Akins v. State, 429 N.E.2d 232, 238 (Ind. 1981) (concluding the Fourth Amendment permitted police to examine defendant's clothing after they seized it pursuant to a lawful arrest).

And we see no reason to reach a different result under our own state constitution. Police had a justifiably strong suspicion that Guilmette had murdered Piechocki; Guilmette lied about his activities during the relevant time period, stole Piechocki's money and keys, and had what appeared to be (and in fact was) blood on his shoe. The intrusion on Guilmette's ordinary activities was minimal, as officers routinely seize an arrestee's personal effects, including clothing, as part of the booking procedure. Finally, although there was no exigency requiring immediate testing of the blood on the shoe, it would be extremely cumbersome to require law enforcement to take the "belt-and-suspenders" approach of applying for an independent warrant anytime they wish to examine or test a piece of evidence they have already lawfully seized.

Nor does it matter that the test revealed evidence of a different crime from that for which Guilmette was arrested. In Farrie v. State, 255 Ind. 681, 266 N.E.2d 212 (1971), the defendant was arrested for possession of narcotics; incident to his arrest, police confiscated his personal effects, including a wristwatch. Id. at 681, 266 N.E.2d at 213. One of the officers recognized the watch as stolen property, and the defendant was subsequently charged with and convicted of burglary. Id., 266 N.E.2d at 213. He appealed, arguing the warrantless seizure of the watch was not incidental to his arrest and was therefore illegal, and that the watch should not have been admitted into evidence against him. Id. at 682, 266 N.E.2d at 213. We rejected that argument, stating: "A search incidental to a valid arrest is lawful regardless of what it reveals." Id. at 683, 266 N.E.2d at 214. Just so here. Guilmette was arrested and his clothing seized pursuant to standard police procedure. Any subsequent search of that clothing, regardless of the means used or the evidence found, was therefore permissible as a search incident to a lawful arrest. Section 11 requires nothing more.

6

**Conclusion**

We hold that evidence properly seized by police may be examined and subjected to scientific testing without further warrant, and we therefore conclude the trial court did not err by admitting the DNA found on Guilmette's shoe into evidence against him. As to the other issues Guilmette raises on appeal, we believe the panel below correctly decided them, and we therefore summarily affirm the portions of the opinion holding (1) the trial court did not abuse its discretion by giving the State's tendered jury instruction on accomplice liability and (2) the evidence was sufficient to support Guilmette's murder conviction. Guilmette, 986 N.E.2d at 342; Ind. Appellate Rule 58(A)(2).

Dickson, C.J., and Rucker, David, and Rush, JJ., concur.