**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**PATRICIA MCMATH**
Appellate Clinic
I.U. Robert H. McKinney School of Law

**BRANDAIS HOLDEN**
Certified Legal Intern
Appellate Clinic
I.U. Robert H. McKinney School of Law
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JODI KATHRYN STEIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

|  |  |  |
|---|---|---|
| CURTIS WILLIAMS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A05-1405-CR-214 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Helen Marchal, Judge
Cause No. 49G16-1309-FD-058706

**January 12, 2015**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

## Case Summary

Curtis Williams ("Williams") appeals his conviction for Battery, as a Class A misdemeanor.[1]  We affirm.

## Issues

Williams presents two issues for our review, which we restate as:

> I.   Whether the trial court abused its discretion when it admitted evidence obtained after a warrantless entry into Williams's home; and
>
> II.  Whether the trial court abused its discretion when it refused Williams's proposed final jury instruction on the affirmative defense of use of reasonable force in defense of a dwelling.

## Facts and Procedural History

In February 2013, Williams met L.C., who subsequently moved into his Indianapolis apartment.  Although L.C.'s name was not on the lease, she paid half of the rent and generally contributed to the household.  On September 3, 2013, Williams and L.C. got in an argument after L.C. decided to go visit her sister for the evening.  When L.C. returned to the apartment the next day, Williams was sitting outside and appeared to L.C. to be intoxicated and to have "an attitude."  (Tr. at 24.)  L.C. passed by Williams and entered the apartment.

When Williams came inside, the two began arguing loudly.  The verbal argument escalated until Williams placed his hands around L.C.'s neck.  Williams squeezed his hands on L.C.'s lower neck while pushing her against a wall.  L.C. testified that Williams applied pressure until she felt "like something was going to tear or break" and that she "couldn't

---

[1] Ind. Code § 35-42-2-1(a)(1)(A).  We refer to the version of the statute in effect at the time of Williams's offense.

2

hardly breathe." (Tr. at 34.) After the attack ended, her voice sounded "raspy" (Tr. at 36) and her throat was "inflamed." (Tr. at 37.) She further testified that the feeling was "painful" (Tr. at 80) and the pain lasted for about a day.

Indianapolis Metropolitan Police Department Officer Cory Heiny ("Officer Heiny") was dispatched to respond to the scene after Williams's neighbors reported a disturbance. When Officer Heiny arrived outside of the apartment, he heard a man's voice yelling. A second police officer, Daniel Greenwell ("Officer Greenwell"), arrived. The officers knocked on Williams's door and announced their presence, to which Williams responded "fuck the police" and did not open the door. (Tr. at 118, 136.) When the officers informed Williams that they wanted to check on the occupants, Williams told the officers "that his girl was with him and she was not answering the door" (Tr. at 118) and they could come in if they were "feeling good." (Tr. at 119). The officers did not hear the woman's voice throughout the encounter.

Concerned that the woman, later identified as L.C., might have been injured or in immediate danger, Officers Heiny and Greenwell contacted their supervisor who gave them permission to force entry. Officer Greenwell kicked in the door and found Williams and L.C. sitting at opposite sides of a small table located near the apartment's entryway. L.C. was visibly shaken and upset. The officers observed redness and scratches on her neck. After the officers separated Williams and L.C., L.C. gave a statement and an evidence technician took photos of her neck. Williams was placed under arrest.

3

On September 5, 2013, the State charged Williams with one count of Strangulation, a Class D felony[2] ("Count I"), one count of Domestic Battery, as a Class A misdemeanor[3] ("Count II"), and one count of Battery, as a Class A misdemeanor ("Count III").

On April 10, 2014, a jury trial was held. The State called L.C. as its first witness. After the jury heard L.C.'s testimony about the physical altercation, Williams objected to the admission of L.C.'s further testimony about any events that occurred after the police officers' entry, arguing that the warrantless search was unconstitutional. The trial court held a hearing outside the presence of the jury, after which the court held that emergency circumstances existed, the warrantless search was reasonable, and the evidence was thus admissible. After trial resumed, Williams renewed his objection prior to the introduction of photographs of L.C.'s neck taken by an evidence technician at the scene. He also objected on the same grounds to both officers' testimony about their observations made after they entered the home.

At the close of evidence, Williams tendered a proposed final jury instruction on the affirmative defense of use of reasonable force in defense of a dwelling. Williams argued that the evidence supported the theory that L.C. was unlawfully on his property and therefore the jury could find that he was justified in using reasonable force to remove her. The trial court found that the evidence did not support the proposed instruction and refused to give it.

---

[2] I.C. § 35-42-2-9.

[3] I.C. § 35-42-2-1.3.

4

At the conclusion of trial, Williams was acquitted of Counts I and II and found guilty of Count III (Battery). On April 16, 2014, the court sentenced Williams to ninety days executed in the Marion County Jail. Williams now appeals his conviction.

**Discussion and Decision**

Admissibility of Evidence

The trial court has broad discretion to rule on the admission of evidence. Guilmette v. State, 14 N.E.3d 38, 40 (Ind. 2014). We review the court's ruling for abuse of that discretion, and we will reverse only when admission is clearly against the logic and effect of the facts and circumstances. Id. (citation omitted). When an appellant's challenge to the court's ruling is predicated on an argument that the search or seizure of the evidence was unconstitutional, it raises a question of law, and we consider that question de novo. Id. at 40-41.

Even if a trial court's decision was an abuse of discretion, we will not reverse if the admission of evidence constituted harmless error. Ind. Trial Rule 61; Sugg v. State, 991 N.E.2d 601, 607 (Ind. Ct. App. 2013), trans. denied. An error is harmless if it does not affect the defendant's substantial rights. T.R. 61. The improper admission of evidence is harmless error when the conviction is supported by substantial independent evidence of guilt as to satisfy the reviewing court that there is no substantial likelihood that the erroneously-admitted evidence contributed to the conviction. Cook v. State, 734 N.E.2d 563, 569 (Ind. 2000), reh'g denied. Furthermore, if the erroneously-admitted evidence is merely cumulative

5

of other evidence in the record, it is harmless error and not grounds for reversal. Lee v. State, 967 N.E.2d 529, 539 (Ind. Ct. App. 2012).

Williams first argues that the trial court abused its discretion when it admitted evidence obtained after the officers' warrantless entry into Williams's home. Williams argues that the search was unreasonable and therefore violated his rights under the Fourth Amendment to the United States Constitution[4] and Article 1, Section 11 of the Indiana Constitution.[5] He argues that the evidence therefore should be excluded as the fruit of an illegal search. In response, the State argues that the search was reasonable and thus not unconstitutional. The State also contends that, even if the search was unreasonable, the trial court's admission of the evidence was harmless error because any evidence collected as a result of the officers' entry "was merely cumulative evidence to L.C.'s own testimony[.]" (Appellee's Br. at 11.)

Without deciding the issue of whether the officers' search of Williams home was unconstitutional, we first address the State's contention that the admission of evidence was harmless error.

At trial, L.C. testified that during an escalating verbal altercation, Williams pushed her against a wall, grabbed her around the neck, and applied pressure. She testified that the pressure caused her to have trouble breathing and that, after the attack, her throat was

---

[4] The Fourth Amendment provides, in relevant part: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ."

[5] Article 1, Section 11 also provides, in relevant part: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated . . . ."

inflamed. The record is clear that Williams did not object to L.C.'s testimony regarding these events, but only objected to her further testimony about the post-entry events. "A failure to object when the evidence is introduced at trial waives the issue for appeal." Delarosa v. State, 938 N.E.2d 690, 694 (Ind. 2010).

Williams then objected to the admission of the photographs and the officers' observations after they entered the apartment. The photographs show redness and scratches on L.C.'s neck. Both officers testified that when they entered Williams's apartment, they saw that L.C. had redness around her neck and described her injuries as consistent with the redness and scratches depicted in the photographs.

L.C.'s unchallenged testimony alone provides substantial independent evidence to sustain Williams's battery conviction.[6] Accordingly, even if we assume that the challenged evidence was illegally obtained, the admission of any further evidence of battery was harmless error. See Nowling v. State, 955 N.E.2d 854, 863 (Ind. Ct. App. 2011) (holding that the erroneous admission of evidence obtained through an illegal search was harmless error because unchallenged witness testimony was substantial, independent evidence to sustain defendant's conviction), clarified & aff'd on reh'g, 961 N.E.2d 34 (Ind. Ct. App. 2012), trans. denied. Moreover, the photographs and the officers' observations of L.C.'s neck were cumulative to L.C.'s testimony that Williams battered her in part by applying pressure to her neck until it became inflamed. Because the challenged evidence was

---

[6] In order to convict Williams of battery as charged, the State was required to prove beyond a reasonable doubt that Williams knowingly touched L.C. in a rude, insolent, or angry manner that resulted in bodily injury. I.C. § 35-42-2-1(a)(1)(A). The State charged that Williams, "on or about September 4, 2013, did knowingly touch [L.C.] in a rude, insolent, or angry manner which resulted in bodily injury, that is: pain and/or bruising and/or swelling and/or abrasions, to [L.C..]" (App. at 24.)

7

cumulative, its admission was also harmless error. See Hollen v. State, 740 N.E.2d 149, 157 (Ind. Ct. App. 2000) (holding that the erroneous admission of an affidavit was harmless error because the affidavit was cumulative of unchallenged witness testimony), opinion adopted, 761 N.E.2d 398 (Ind. 2002); Muncy v. State, 834 N.E.2d 215, 217 (Ind. Ct. App. 2005) (holding that the erroneous admission of weapons was harmless error where testimony about the weapons was already admitted and not challenged), trans. denied.

In his reply brief, Williams argues that "[t]he evidence gathered from the officers' unlawful forced entry into [his] home bolstered [L.C.'s] testimony, and was therefore prejudicial to [him]." (Appellant's Reply Br. at 3.) He further argues that the admission cannot be harmless error because, "[w]ithout this evidence, the jury would have heard only a 'he said, she said' account of that incident." (Appellant's Reply Br. at 4.) However, it is well settled that "[a] conviction may be sustained on the uncorroborated testimony of a single witness or victim." Baltimore v. State, 878 N.E.2d 253, 258 (Ind. Ct. App. 2007), trans. denied. Furthermore, to the extent that the photographs of L.C.'s neck lend weight to the State's charge of strangulation, we observe that the jury acquitted Williams of that charge.

Because there was substantial independent evidence to support Williams's battery conviction and the challenged evidence was cumulative of other evidence presented, we hold that even if the trial court erroneously admitted the challenged evidence, such admission would constitute harmless error. Accordingly, Williams has not shown grounds for reversal due to the improper admission of evidence.

Jury Instructions

8

Williams also contends that the trial court improperly refused his proposed jury instruction regarding the defense of a dwelling. Instructing a jury is left to the sound discretion of the trial court, and we review the court's decision only for an abuse of discretion. Washington v. State, 997 N.E.2d 342, 345 (Ind. 2013). To determine whether a trial court has abused its discretion, we first ascertain whether the tendered instruction is a correct statement of the law. Id. We then examine the record to determine whether there was evidence present to support the tendered instruction. Id. at 345-46. Finally, we consider whether the substance of the tendered instruction was covered by another instruction or instructions. Id. at 346. A defendant is entitled to an instruction on any defense that has some foundation in the evidence. Potter v. State, 684 N.E.2d 1127, 1135 (Ind. 1997).

Williams was entitled to an instruction on the affirmative defense of use of reasonable force in defense of a dwelling if there was some foundation in the evidence that Williams reasonably believed that the force was necessary to prevent or terminate L.C.'s unlawful entry of or attack on Williams's dwelling, curtilage, or occupied motor vehicle. See I.C. § 35-41-3-2(d). Williams tendered Indiana Pattern Jury Instruction Criminal Instruction No. 10.03B, which states, in relevant part:

> A person may use reasonable force, including deadly force, against another person, and does not have a duty to retreat, if he reasonably believes that the force is necessary to prevent or terminate the other person's unlawful entry of or attack on his dwelling.

(App. at 69.)

The trial court rejected Williams's proposed instruction because "I don't think the evidence presents the giving of this instruction[.]" (Tr. at 172.) The State concedes that the

9

tendered instruction was a correct statement of law and that it was not covered by any other instruction. The only contested issue on appeal, therefore, is whether the evidence presented supported the instruction.

The evidence shows that during the altercation, Williams pinned L.C. against an interior wall when he wrapped his hands around her neck. When Officer Heiny arrived and knocked on the door, Williams told the officer that he would not open the door. When asked if anyone else was inside, Williams responded "that his girl was with him and she was not answering the door." (Tr. at 118.) The evidence thus indicates that Williams was not attempting to get L.C. out of his apartment or otherwise protect his property. Rather, the evidence indicates that Williams used force to keep L.C. inside. As such, there is no evidence that when Williams battered L.C. he was attempting "to prevent or terminate [L.C.'s] unlawful entry of or attack on [his] dwelling" in accordance with Indiana Code section 35-41-3-2(d). Accordingly, we cannot say that the trial court abused its discretion when it denied Williams's proposed jury instruction on defense of a dwelling.

Williams argues that the evidence supports the instruction because "there was evidence [L.C.] was not authorized to be [in Williams's apartment] and was asked to leave prior to the altercation turning physical." (Appellant's Br. at 18.) On appeal, the parties dispute whether L.C. testified that Williams asked her to leave just prior to the battery. On cross-examination, L.C. testified:

| | |
|---|---|
| [Defense]: | Mr. Williams told you to leave the house <u>on that day</u> correct? |
| [L.C.]: | No. |
| [Defense]: | He was trying to get you to leave? |
| [L.C.]: | No. |

(Tr. at 85-86) (emphasis added).  Defense counsel then asked L.C. about a prior recorded

statement she made:

> [Defense]: All right and if I play that statement am I going to hear you say the argument was over Mr. Williams wanting you to leave?
>
> [L.C.]: <u>At the time before him choking me?  No.</u>  I didn't … <u>well if I said that it wasn't that time that happened.  It had to be another time</u> because that did not happen.
> [. . . .]
>
> [Defense]: [L.C.] is it your testimony that you don't remember my client, Mr. Williams, trying to kick you out of the house or that it didn't happen?
>
> [L.C.]: I am saying that <u>I don't remember him trying to kick me out the house when I came back that day</u>.  That he came over to choke me … I don't remember that.  I don't remember him saying "get out my house right now" <u>when I got back</u> but I remember him saying "you shouldn't have went, you should have stayed."  [. . .]

(Tr. at 89, 91) (emphasis added).

Williams then played a recorded statement to refresh L.C.'s memory.  The trial court

stated that "after hearing that I … I guess we can move forward with [L.C.'s] memory being

refreshed or asking her about that but again I am not seeing any inconsistencies[.]"  (Tr. at

94.)

Williams then attempted to impeach L.C. with her prior testimony:

> [Defense]: Mr. Williams did indeed, part of the argument did indeed want you to leave correct?
>
> [L.C.]: Yes, well he said that.
>
> [Defense]: And you said "I am not going anywhere" is what you …?
>
> [L.C.]: Right.  Right.
>
> [Defense]: But he was persistent and he wanted you to leave?
>
> [L.C.]: No he wasn't persistent.  He just said that.
> [. . . .]
>
> [Defense]: He wanted you to leave and you wouldn't leave?

11

| [L.C.]: | Okay. |
| [Defense]: | Is that correct? |
| [L.C.]: | No really because <u>I don't remember it going like that</u>. I don't remember him telling me to get out the house. No I don't. |
| [Defense]: | But you just heard in your prior statement what you said? |
| [L.C.]: | Yes well if that is what I said then but I don't remember it going like that <u>when I came back from my sister's</u>. |

(Tr. at 95-96) (emphasis added). L.C. also later testified on cross-examination:

| [Defense]: | And he was telling you to leave? |
| [L.C.]: | I can't remember that. |
| [Defense]: | You heard yourself say prior that he …. |
| [L.C.]: | Oh yes. |
| [Defense]: | …he was telling you to leave? |
| [L.C.]: | Yes but I can't remember him saying that day <u>when I came back from my sister's</u> to leave and get out of here. |

(Tr. at 101) (emphasis added).

Our review of the record as a whole shows that L.C. consistently testified that she did not remember him telling her to leave on September 4, 2013 when the incident occurred, but that Williams may have asked her to leave at some point during the argument that spanned two days. We cannot say that the trial court abused its discretion when it found that her testimony was not inconsistent. Moreover, even if Williams asked L.C. to leave on September 4, nothing in the record indicates that L.C. behaved in such a manner that Williams reasonably could have believed that force was "necessary" to terminate L.C.'s entry of the apartment. <u>See</u> I.C. § 35-41-3-2(d).

The evidence does not support Williams's proposed jury instruction of the affirmative defense of use of reasonable force in defense of a dwelling. The trial court therefore did not abuse its discretion in refusing Williams's proposed instruction.

12

## Conclusion

Even presuming, without deciding, that the trial court abused its discretion in admitting certain evidence obtained as the result of a warrantless search, such admission constituted harmless error because the unchallenged witness testimony was substantial independent evidence to convict Williams of battery and the challenged evidence was cumulative of other evidence presented. The trial court did not abuse its discretion when it refused Williams's proposed jury instruction on an affirmative defense.

Affirmed.

ROBB, J., and BROWN, J., concur.