## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 30 2017, 9:48 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Alan K. Wilson
Muncie, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Christina D. Pace
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Reggie Thomas Johnson,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

May 30, 2017

Court of Appeals Case No.
18A02-1607-CR-1712

Appeal from the Delaware Circuit Court

The Honorable Linda Ralu Wolf, Judge

Trial Court Cause No.
18C03-1412-F4-4

**Najam, Judge.**

# Statement of the Case

Reggie Thomas Johnson appeals his convictions, following a jury trial, for dealing in cocaine, as a Level 4 felony, and possession of marijuana, as a Class B misdemeanor.[1] He raises the following three issues on appeal:

1. Whether the trial court abused its discretion when it admitted evidence of Johnson's acts prior to the date alleged in the charging information.

2. Whether the trial court abused its discretion when it admitted evidence seized pursuant to an automobile inventory search.

3. Whether the State presented sufficient evidence to support Johnson's convictions.

We affirm.

# Facts and Procedural History

For two weeks prior to November 10, 2014, Justin King and Megan Stephens rented room 135 at the Bestway Inn in Muncie and allowed Johnson to use the room in exchange for marijuana, prescription medications, and other contraband. King witnessed Johnson selling drugs out of room 135 several times during the two-week period. King and Stephens also allowed an acquaintance of Johnson's, Alvin Jordan, to use their room to sell drugs.

---

[1] Johnson does not challenge his conviction for possession of a controlled substance, as a Class A misdemeanor.

[4] During that same two-week period, Johnson's friend Kayley Hesher picked him up several times in her stepfather's black Chevrolet Tahoe and drove him places at his request. Hesher saw Johnson with marijuana and pills in his possession while he was in her car. Hesher also witnessed Johnson "hand [something] off" in folded pieces of paper to others when stopped. Tr. Vol. II at 129.

[5] The Muncie Police Department ("MPD") Narcotics Unit had been conducting surveillance and believed that Johnson was conducting a drug-dealing operation in room 135 at the Bestway Inn. On November 10, the MPD Narcotics Unit set up a controlled buy to take place in room 135 with Johnson as the target. The confidential informant ("the C.I.") was to buy 0.10 grams of heroin from Johnson with $180 in marked bills. The C.I. entered room 135 and bought heroin from Jordan.

[6] Immediately after the controlled buy, Hesher and Johnson arrived at the Bestway Inn in her black Tahoe. Hesher and Johnson went inside room 135 for a few minutes and then exited with Jordan. Hesher, Johnson, and Jordan entered the black Tahoe. Hesher drove the vehicle, Johnson sat in the front passenger seat, and Jordan sat in the back seat behind Hesher.

[7] Daleville Police Department Reserve Officer John Jett assisted MPD with surveillance during and after the November 10 controlled buy in room 135 of the Bestway Inn. After the buy, Officer Jett followed the black Tahoe that Hesher, Johnson, and Jordan had just entered. Johnson had an active warrant

out for his arrest. Accordingly, Officer Jett radioed for uniformed officers in a marked vehicle to stop the Tahoe, which they did.

[8] When the police officers stopped the truck, Johnson told Hesher to "stay calm." Tr. Vol. II at 136-37. Hesher then saw Johnson put money and "a baggie" in his pants. *Id*. at 137. As Officer Jett approached the passenger side of the vehicle, where Johnson was sitting, he smelled an odor of raw marijuana emanating from the vehicle. Officer Jett instructed Johnson to exit the vehicle, advised Johnson that he was under arrest, and did a pat-down search of Johnson. Officer Jett found $875—including $110 of the marked money the C.I. had used in the controlled buy—and Xanax pills on Johnson's person.

[9] Officer Jett then searched the black Tahoe. In a pocket on the back of the driver's seat, Officer Jett found a plastic bag containing a green, plant-like substance; a white plastic bag containing a white, rock-like substance; and a clear plastic bag with Xanax and other prescription pills in it. Officer Jett also found two cellular telephones and a set of scales on the floor between the two back seats. Based on his training and experience, Officer Jett believed that the plant-like substance was marijuana and the rock-like substance was cocaine. Later testing confirmed that the baggies contained 57.97 grams of marijuana and 4.05 grams of cocaine. Officers then executed a search warrant for room 135 and seized other contraband.

[10] The State charged Johnson with, among other things, dealing in cocaine, as a Level 4 felony; possession of a controlled substance, as a Class A misdemeanor;

and possession of marijuana, as a Class B misdemeanor, based on the evidence seized from the Tahoe on November 10, 2014. At Johnson's ensuing jury trial, the trial court admitted, over Johnson's objection, evidence of events that occurred in room 135 for the two weeks prior to November 10. The jury found Johnson guilty of dealing in cocaine, possession of marijuana, and possession of a controlled substance. The trial court entered judgment of conviction and sentenced Johnson accordingly. This appeal ensued.

## Discussion and Decision

### Issue One: Admissibility of Johnson's Acts Prior to November 10

[11]  On appeal, Johnson first asserts that the trial court abused its discretion when it admitted into evidence Johnson's conduct from the hotel room prior to November 10, 2014. The trial court has broad discretion to rule on the admissibility of evidence. *Guilmette v. State*, 14 N.E.3d 38, 40 (Ind. 2014). We review such rulings for an abuse of that discretion. *Id.* We will reverse only when the trial court's decision is clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights. *Id.*

[12]  Johnson argues that his actions for the two weeks prior to November 10 were not intrinsic to the charged offenses. "Other acts are 'intrinsic' if they occur at the same time and under the same circumstances as the crimes charged." *Bennett v. State*, 5 N.E.3d 498, 509 (Ind. Ct. App. 2014) (quotation marks omitted), *trans. denied*; *see also* Ind. Evidence Rule 404(b). Further, "evidence of happenings near in time and place that complete the story of the crime is

admissible even if it tends to establish the commission of other crimes not included among those being prosecuted." *Bennett*, 5 N.E.3d at 509 (quotation marks and alterations omitted); *see also United States v. Strong*, 485 F.3d 985, 990 (7th Cir. 2007) ("An act is 'inextricably intertwined' with the charged crime [and therefore admissible under Federal Rule of Evidence 404(b)] if it completes the story of the crime, creates a chronological or conceptual void in the story if omitted, helps to explain the circumstances surrounding the charged crime[,] or tends to prove an essential element of the charged crime.").

[13] We hold that the trial court did not abuse its discretion when it admitted the challenged evidence. Johnson's two-week relationship to the hotel room at which the controlled buy occurred; his relationships to King, Stephens, and Hesher, who were all witnesses at Johnson's trial; and Jordan's actions at that same room and with those same people were all essential to the story of the events of November 10. As such, we affirm the trial court's judgment on this issue.[2]

### Issue Two: Inventory Search

[14] Johnson next asserts that Officer Jett's inventory search of Hesher's Tahoe was contrary to Johnson's rights under the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution. But we agree with the State that Johnson, who was merely a passenger in the Tahoe

---

[2] Insofar as Johnson's argument on appeal might be that the trial court abused its discretion when it admitted the challenged evidence under Indiana Evidence Rule 403, we conclude that the trial court also did not abuse its discretion under that Rule.

and had no ownership, control, possession, or interest in that vehicle, lacks standing under the Fourth Amendment and Article 1, Section 11 to challenge the officer's search of it. *See Rakas v. Illinois*, 439 U.S. 128, 148-49 (1978); *Campos v. State*, 885 N.E.2d 590, 598-99 (Ind. 2008). As such, we reject Johnson's challenge to Officer Jett's inventory search of the Tahoe.

### Issue Three: Sufficiency of the Evidence

[15] Finally, Johnson contends that the State failed to present sufficient evidence to support his convictions. Our standard of review on a claim of insufficient evidence is well-established:

> When reviewing a claim that the evidence introduced at trial was insufficient to support a conviction, we consider only the probative evidence and reasonable inferences that support the trial court's finding of guilt. *Drane v. State*, 867 N.E.2d 144 (Ind. 2007). We likewise consider conflicting evidence in the light most favorable to the trial court's finding. *Wright v. State*, 828 N.E.2d 904 (Ind. 2005). It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. *Drane*, 867 N.E.2d at 147. Instead, we will affirm the conviction unless no reasonable trier of fact could have found the elements of the crime beyond a reasonable doubt. *Jenkins v. State*, 726 N.E.2d 268, 270 (Ind. 2000).

*Gray v. State*, 957 N.E.2d 171, 174 (Ind. 2011) (footnote omitted).

[16] To convict Johnson of dealing in cocaine, as a Level 4 felony, the State was required to show that he possessed cocaine with the intent to deliver it. Ind. Code § 35-48-4-1 (2014). To prove that Johnson possessed marijuana, as a Class B misdemeanor, the State was required to show that he knowingly or

intentionally possessed marijuana. I.C. § 35-48-4-11. Possession can be actual or constructive. Here, the parties dispute only whether Johnson constructively possessed the contraband.

A person constructively possesses contraband when the person has (1) the capability to maintain dominion and control over the item, and (2) the intent to maintain dominion and control over it. *Id*. There is no question that Johnson had the capability to maintain dominion and control over the cocaine and marijuana inside the Tahoe, as that contraband was within his reach. *Holmes v. State*, 785 N.E.2d 658, 661 (Ind. Ct. App. 2003). Thus, we turn to whether a reasonable fact-finder could conclude on these facts that Johnson had the intent to possess that contraband.

For such issues, our ultimate question is "whether a reasonable fact-finder could conclude from the evidence that the defendant knew of the nature and presence of the contraband." *Johnson v. State*, 59 N.E.3d 1071, 1074 (Ind. Ct. App. 2016). We have previously enumerated several nonexhaustive facts that the fact-finder might consider where, as here, a defendant's possession of the premises in which the contraband is found is not exclusive:

> (1) incriminating statements made by the defendant, (2) attempted flight or furtive gestures, (3) location of substances like drugs in settings that suggest manufacturing, (4) proximity of the contraband to the defendant, (5) location of the contraband within the defendant's plain view, and (6) the mingling of the contraband with other items owned by the defendant.

*Wilkerson v. State*, 918 N.E.2d 458, 462 (Ind. Ct. App. 2009).

[19]     We agree with the State that a reasonable fact-finder could have concluded that Johnson knew of the nature and presence of the contraband inside the Tahoe. First, with respect to the marijuana discovered inside the vehicle, Officer Jett testified that, as he approached the Tahoe upon initiating the traffic stop, he smelled the odor of raw marijuana emanating from the vehicle. That is, the odor of raw marijuana was strong enough to be smelled outside of the vehicle; a reasonable fact-finder could conclude that it must have been obvious within the vehicle. We conclude that this fact, in addition to the proximity of the marijuana to Johnson, is sufficient evidence from which a reasonable fact-finder could conclude that Johnson knew of the marijuana inside the vehicle.

[20]     With respect to the cocaine, the following facts most favorable to the judgment support the fact-finder's conclusion that Johnson knew of its nature and presence inside the vehicle:

- The cocaine was within close proximity to Johnson and Jordan.
- Upon the initiation of the traffic stop, Johnson told Hesher, who was driving the Tahoe, to stay calm. While this is not in-and-of-itself an incriminating statement, a reasonable fact-finder could nonetheless infer from that statement that Johnson told Hesher to stay calm because he knew that she was nervous about the contraband inside the vehicle being discovered.
- Also upon the initiation of the traffic stop, Johnson made furtive gestures. Specifically, he placed money and Xanax pills into his pants.
- A large amount of cash—which he had shoved into his pants upon the initiation of the traffic stop—was found on Johnson's person and included some of the C.I.'s buy money commingled with other cash.
- Jordan, who was in the back seat, had engaged the C.I. in the controlled buy just minutes before entering the Tahoe. Thus, a reasonable fact-finder could conclude that the commingling of the C.I.'s money with

Johnson's, which, again, was found on Johnson's person, demonstrates that Jordan and Johnson were acting together.[3]

- Xanax pills were found in a plastic baggie in the back-seat pocket along with the cocaine and marijuana. Again, Xanax pills were also found on Johnson's person, and the fact-finder also could have reasonably concluded that Johnson knew of the presence and nature of the marijuana. Thus, the cocaine was commingled with other items over which the fact-finder could have reasonably concluded that Johnson had control, which creates a reasonable inference that Johnson also had control over the cocaine.

- Scales and two cell phones were discovered lying on the floor of the back seat of the Tahoe, in plain view of the vehicle's occupants. As such, the Tahoe was comparable to a manufacturing setting.

- The evidence before the jury demonstrates that Johnson's presence in the Tahoe was not incidental. Rather, his criminal activity was conducted in substantial part from the Tahoe.

In sum, the evidence taken as a whole supports a reasonable inference that Johnson had constructive possession of the contraband in the Tahoe. Insofar as Johnson separately argues that the State failed to prove intent to deliver, his argument is merely a request to reweigh the evidence, which we will not do. We affirm Johnson's convictions.

Affirmed.

Bailey, J., and May, J., concur.

---

[3] The State asserts on appeal that, even if the evidence is insufficient to support Johnson's convictions under a theory of constructive possession, we must still affirm under the State's alternative theory of accomplice liability, which the State argued to the jury. We need not consider the State's alternative theory given our disposition, but we note that Johnson has not challenged the accomplice-liability theory on appeal.