*Pursuant to Indiana Appellate Rule 65(E), the trial court and parties shall not take any action in reliance upon this opinion until it is certified.*



IN THE

# Indiana Supreme Court

Supreme Court Case No. 26S-CR-198



**FILED**

Jun 24 2026, 1:35 pm

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

## Facundo Ramos-Osario,

*Appellant/Defendant,*

—v—

## State of Indiana,

*Appellee/Plaintiff.*

---

Argued: December 9, 2025 | Decided: June 24, 2026

Appeal from the Marion Superior Court 35
No. 49D35-2304-CM-11332
The Honorable Barbara Crawford, Senior Judge

On Petition to Transfer from the Indiana Court of Appeals
No. 24A-CR-1761

---

**Opinion by Justice Molter**

Justices Massa and Slaughter concur.
Chief Justice Rush dissents with separate opinion, in which Justice Goff joins.

**Molter, Justice.**

Aiming to deter police misconduct and preserve the integrity of judicial proceedings, the "exclusionary rule" requires courts to exclude evidence from trial that police obtain by violating a defendant's constitutional rights. When a defendant invokes the rule, the State bears the burden to show constitutional compliance. The question here is whether a court must suppress evidence when the State proves constitutional compliance only at a pretrial suppression hearing and not again at trial.

We hold that constitutionally obtained evidence should not be suppressed in those circumstances because suppression would not advance the rule's aims. Requiring the State to prove constitutional compliance twice doesn't better deter misconduct or preserve integrity than making the State prove compliance once. Still, after a trial court denies a pretrial motion to suppress based on the conclusion that police didn't violate the defendant's constitutional rights, the defendant may ask the court to reconsider its ruling at trial. At that point, the court may consider both suppression hearing evidence and trial evidence. And then on appeal, the reviewing court likewise may consider evidence from both the suppression hearing and trial when evaluating constitutional compliance.

In this case, the State demonstrated at a pretrial suppression hearing that the evidence it would later use to convict Facundo Ramos-Osario of driving while intoxicated was obtained in compliance with our state and federal constitutions. We therefore affirm the judgment even though the officer who had reasonable suspicion for the traffic stop testified only at the suppression hearing and not again at trial.

## Facts and Procedural History

Around 2:00 a.m. on April 21, 2023, Indianapolis Metropolitan Police Department (IMPD) Officer Welter Solares heard gunfire and saw muzzle flashes coming from a black truck driving past him on Harding Street in Indianapolis. He pulled the truck over, and IMPD Officer Cameron Hester came to assist with the stop. The officers removed three individuals from

the truck and handcuffed them. Officer Hester noticed the driver, Ramos-Osario, smelled of alcohol and had glassy eyes. So he administered a field sobriety test (which indicated Ramos-Osario was intoxicated) and a portable breath test (which had a result of 0.121). After that, Ramos-Osario consented to a chemical test, which showed a blood alcohol concentration of over .08.

The State charged Ramos-Osario with two Class C misdemeanors—operating a vehicle with an alcohol concentration equivalent of .08 or more and operating while intoxicated. He moved to suppress the evidence obtained from the traffic stop, challenging the stop under the Fourth Amendment to the U.S. Constitution and Article 1, Section 11 of the Indiana Constitution. He argued the stop violated the federal constitution because it was not supported by reasonable suspicion, and it violated the state constitution because it was based solely on the truck's proximity to the gunshots, which he believed was unreasonable under the circumstances.

The trial court held a hearing on the motion to suppress. Officer Solares testified that he heard gunshots approaching his location, and the gunshots sounded "closest" to him as a black truck—the only vehicle on the road—drove past him on Harding Street. Tr. Vol. 2 at 5. He also saw "muzzle flashes" coming from that truck. *Id.* at 5, 8–9. He stopped the truck, and he and Officer Hester removed the occupants from the truck and handcuffed them. Officer Hester testified that he also heard gunshots but could not pinpoint where they came from. He then heard Officer Solares say over the radio "something about a truck being involved" with the gunshots, so he went to assist Officer Solares with the stop. *Id.* at 24.

Based on both officers' testimony, the magistrate determined the stop was constitutional. He therefore denied Ramos-Osario's motion to suppress, and the case proceeded to trial.

A superior court judge, rather than the magistrate, presided over Ramos-Osario's bench trial. Officer Hester testified at the trial, but Officer Solares did not. When the State asked Officer Hester about the traffic stop, Ramos-Osario objected, arguing there was "[n]o foundation for the stop, no reasonable suspicion." *Id.* at 44. The judge overruled the objection but

then sustained several of Ramos-Osario's objections to further questions on the same grounds. Amid the objections, Officer Hester testified that he heard gunshots, heard Officer Solares say on the radio that he heard gunshots and believed a northbound truck was involved, and "backed onto" Officer Solares's "[i]nvestigation of shots fired." *Id.* at 45–47.

The State asked Officer Hester what happened next, after the stop, and Ramos-Osario again objected: "We still don't have reasonable suspicion [for] the stop. All we have is the sound of gunshots." *Id.* at 47. The judge overruled his objection. And Officer Hester went on to testify to his observations of Ramos-Osario's intoxication.

The trial court found Ramos-Osario guilty. To avoid double jeopardy concerns, the court entered judgment only for operating a vehicle with an alcohol concentration equivalent of .08 or more, and the court sentenced him to sixty days in jail, with fifty-two days suspended. Ramos-Osario appealed, arguing the trial court erred by admitting evidence obtained during the stop over his repeated objections that the State had not established reasonable suspicion for the stop at trial.

In a unanimous, published opinion, the Court of Appeals reversed. *Ramos-Osario v. State*, 257 N.E.3d 32 (Ind. Ct. App. 2025), *reh'g denied*. In the panel's view, because the suppression hearing evidence was not incorporated at the bench trial, and because the judge presiding over the trial did not conduct the suppression hearing, the trial judge could only consider the evidence presented at trial in determining the admissibility of the challenged testimony. *Id.* at 38–39. At trial, Officer Hester testified that he heard gunshots (but did not know where they came from) and heard Officer Solares say he believed a truck was involved with the gunshots. *Id.* at 39. The Court of Appeals held this was insufficient to establish reasonable suspicion for the stop under the Fourth Amendment. *Id.* It also held the stop violated Article 1, Section 11, noting that the State failed to present evidence at trial that the stop was "based on a particularized suspicion that the gunfire came from [Ramos-Osario's] truck." *Id.* at 39–40.

The State filed a petition for rehearing, which was denied. The State then petitioned for transfer, which we now grant, thus vacating the opinion of the Court of Appeals. Ind. Appellate Rule 58(A).

## Standard of Review

Generally, the Court reviews decisions on the admissibility of evidence for an abuse of discretion. *Nicholson v. State*, 963 N.E.2d 1098, 1099 (Ind. 2012). But when a defendant's challenge to such a decision "is predicated on an argument that impugns the constitutionality of the search or seizure of the evidence, it raises a question of law" that the Court considers de novo. *Guilmette v. State*, 14 N.E.3d 38, 40–41 (Ind. 2014). And the Court can "affirm the trial court's decision on any basis supported by the record." *Means v. State*, 201 N.E.3d 1158, 1163 (Ind. 2023).

## Discussion and Decision

Ramos-Osario argues his stop violated both the state and federal constitutions and that, when assessing the stop's constitutionality, both the trial and appellate courts are limited to considering the trial evidence, not the evidence from the suppression hearing. Below we first explain why the stop was constitutional, and then we explain why we consider evidence from both the suppression hearing and trial when reaching that conclusion.

## I. The stop did not violate Ramos-Osario's rights under Article 1, Section 11 or the Fourth Amendment.

Article 1, Section 11 of the Indiana Constitution and the Fourth Amendment to the U.S. Constitution protect citizens from unreasonable searches and seizures. Ind. Const. art. 1, § 11; U.S. Const. amend. IV. Traffic stops are seizures that fall within the protection of both constitutions. *Marshall v. State*, 117 N.E.3d 1254, 1258 (Ind. 2019). Under the Indiana Constitution, the legality of a stop "turns on an evaluation of the reasonableness of the police conduct under the totality of the circumstances." *Litchfield v. State*, 824 N.E.2d 356, 359 (Ind. 2005). When evaluating reasonableness, we balance three factors: "1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the

degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs." *Id.* at 361.

Considering the first factor, Officer Solares testified at the suppression hearing that he heard gunshots and saw muzzle flashes coming from the truck Ramos-Osario was driving. That testimony reflects a high degree of suspicion and concern that the occupants of the truck were engaged in serious criminal activity. For the second factor, the stop was moderately intrusive. While routine traffic stops typically only amount "to a small intrusion" on a defendant's ordinary activities, *Marshall*, 117 N.E.3d at 1262, this stop exceeded a routine stop because the occupants were immediately removed from the truck, handcuffed, and questioned, *see Alexander-Woods v. State*, 163 N.E.3d 902, 912 (Ind. Ct. App. 2021) (concluding the degree of intrusion was moderate where an officer ordered the occupants out of the vehicle and conducted a search of the interior), *disapproved of on other grounds in Bunnell v. State*, 172 N.E.3d 1231 (Ind. 2021). And for the third factor, Ramos-Osario concedes law enforcement's interest and needs in investigating shots fired and preventing gun-related crime are high. Thus, on balance, the stop was reasonable and did not violate Article 1, Section 11.

We reach the same conclusion under the Fourth Amendment, which we analyze separately. *State v. Washington*, 898 N.E.2d 1200, 1206 (Ind. 2008). The Fourth Amendment permits officers to "stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot." *Robinson v. State*, 5 N.E.3d 362, 367 (Ind. 2014) (quotations omitted). Reasonable suspicion exists if the stopping officer can "articulate some facts that provide a particularized and objective basis" for suspecting criminal activity has occurred. *Marshall*, 117 N.E.3d at 1259. Again, Officer Solares testified that he heard gunshots that sounded closest to him as Ramos-Osario's truck, the only vehicle on the road, passed by. And he saw muzzle flashes coming from that truck. Therefore, Officer Solares had reasonable suspicion to stop Ramos-Osario's truck.

Looking at the whole record, there is no good reason to doubt the constitutionality of the traffic stop.

## II. We consider evidence from both the suppression hearing and trial.

Ramos-Osario argues the scope of the record we can consider in assessing the constitutional question is more limited; he believes the trial and appellate courts can consider only the trial evidence in determining whether the stop was constitutional. In Ramos-Osario's view, because the State failed to present Officer Solares's testimony at trial, it failed to prove the constitutionality of the stop at trial, so all the resulting evidence should have been suppressed. The State disagrees, arguing it was not required to present Officer Solares's testimony again at trial and that courts can look back to suppression hearing evidence. We agree with the State.

### A. While judges can reconsider pretrial suppression rulings, the State is not required to prove constitutional compliance a second time at trial.

We anticipated these questions about the scope of review in *Magley v. State*, 335 N.E.2d 811 (Ind. 1975), *overruled on other grounds by Smith v. State*, 689 N.E.2d 1238 (Ind. 1997). Recognizing the growing use of pretrial motions to suppress, the Court provided "guidance for the trial judge who is faced with a trial objection to [evidence] previously determined to be admissible." *Id.* at 821. The Court began by noting that when a defendant objects at trial after an unsuccessful motion to suppress, "the State has already successfully met the issues raised in the challenge" at the suppression hearing. *Id.* Thus, if a defendant stands on his pretrial

objection and objects at trial to preserve the issue for appeal, the trial judge should summarily overrule his objection.[1] *Id.*

If the defendant objects "based on [a] new factual or legal matter," though, the trial judge has two options. *Id.* First, she can still summarily overrule the objection "if the new matter could in no event result in a determination of inadmissibility." *Id.* But if the judge believes the new matter has "sufficient substance," she may "reconsider the issue of admissibility," which may require her "to weigh the old evidence with the new." *Id.*

Our guidance in *Magley* makes several things clear. First, the State is not required to demonstrate constitutional compliance a second time at trial. *Id.* Once the State successfully proves the constitutionality of the police action at the suppression hearing, it does not have to present its suppression hearing evidence again for the trial judge to assess the defendant's trial objection. *Id.* at 821–22. Although the dissenting opinion disagrees, there is nothing exceptional about this conclusion. It is well accepted that "a favorable ruling at the suppression hearing relieves the [State] of the burden of proving a second time at trial that its evidence was constitutionally obtained." *Commonwealth v. DeMichel*, 277 A.2d 159, 162 (Pa. 1971) (plurality opinion).[2]

---

[1] Specifically, in *Magley*, we wrote that when a defendant makes such an objection, "the trial judge should consider the pre-trial determination res judicata and binding upon him." *Id.* Later, we clarified that this reference to res judicata was not meant literally. *Joyner v. State*, 678 N.E.2d 386, 393 (Ind. 1997). After all, "a ruling on a pretrial motion to suppress is not intended to serve as the final expression concerning admissibility." *Id.* (quotations omitted). Rather, *Magley* makes clear a trial judge is not *required* to "rehear evidence and arguments relating to admissibility issues previously heard and determined during pre-trial proceedings." *Id.*

[2] *See also People v. Jones*, 472 N.E.2d 1176, 1181 (Ill. App. Ct. 1984) (reasoning that, once a motion to suppress is decided at a pretrial hearing, "the focus of the trial testimony is not directed to a reestablishment of the issues previously resolved at the pretrial hearing"), *cert. denied*; *State v. Pope*, 224 N.W.2d 521, 525 (Neb. 1974) (noting "the State, having once established the legality of police searches, is not again obligated, at trial, to prove that legality when introducing the evidence obtained through those searches"); 6 Wayne R. LaFave, Search & Seizure § 11.2(f) (6th ed.) (same); *Bays v. Commonwealth*, 486 S.W.2d 706, 708 (Ky. 1972) (rejecting the defendant's complaint that the State failed to "repeat all the evidence concerning the circumstances of the search at the trial before the jury" because the legality of a search is

Relatedly, *Magley* establishes that a trial judge can summarily reject a request at trial to suppress evidence that was already the subject of a suppression hearing. *See Magley*, 335 N.E.2d at 821; *see also Joyner v. State*, 678 N.E.2d 386, 393 (Ind. 1997) (explaining trial judges "need not . . . rehear evidence and arguments relating to admissibility issues previously heard and determined during pre-trial proceedings"), *reh'g denied*. And this is true even if the trial judge did not conduct the suppression hearing. *Magley*, 335 N.E.2d at 821.

But as with all interlocutory decisions, a trial judge retains inherent authority to reconsider a suppression issue. *Means v. State*, 201 N.E.3d 1158, 1164 (Ind. 2023). So a defendant can ask a judge to reconsider a prior suppression ruling in the context of trial. *Jackson v. State*, 735 N.E.2d 1146, 1152 (Ind. 2000). If a defendant asks a judge, at trial, to reconsider a prior suppression ruling, *Magley* lays out the process. *Magley*, 335 N.E.2d at 821. And in *Magley*, we recognized that reconsidering a suppression ruling at trial permits the trial judge to consider "the new and old evidence "—the trial *and* suppression hearing evidence—"as a body." *Id.*; *see Guilmette v. State*, 14 N.E.3d 38, 40 n.1 (Ind. 2014) (recognizing that trial courts can consider suppression hearing evidence alongside trial evidence).

Considering suppression hearing evidence along with trial evidence is consistent with the exclusionary rule's purposes—deterring police misconduct and protecting the integrity of judicial proceedings. *Wright v. State*, 108 N.E.3d 307, 314 (Ind. 2018); s*ee also Membres v. State*, 889 N.E.2d 265, 277 (Ind. 2008) (Sullivan, J., dissenting) (noting the exclusionary rule also "protect[s] the integrity of the judicial process and . . . the rights of criminal defendants"). The rule should apply only where its application advances its purposes, *State v. Adams*, 762 N.E.2d 728, 730 (Ind. 2002); *Herring v. United States*, 555 U.S. 135, 141 (2009), and requiring the State to prove constitutional compliance twice rather than once does not advance either purpose.

"a matter to be determined by the trial judge" at a pretrial hearing "outside the presence of the jury").

Accordingly, consistent with *Magley*, we hold that the State does not have to demonstrate constitutional compliance a second time at trial and that, when determining whether challenged evidence is admissible at trial, the trial judge can consider evidence from both the suppression hearing and trial.[3]

In reaching this holding, we join jurisdictions across the country that consider suppression hearing evidence in assessing the admissibility of challenged evidence at trial. *See, e.g.*, *United States v. Howell*, 958 F.3d 589, 595 (7th Cir. 2020) ("When a defendant chooses to renew a suppression motion at or after trial, a district court is free to incorporate its past reasoning . . . or alternatively to consider evidence introduced at trial."); *United States v. Willis*, 826 F.3d 1265, 1270 (10th Cir. 2016) (explaining a district court "may consider trial testimony," in addition to suppression hearing evidence, "if the defendant renews the suppression motion at trial" (quotations omitted)); *DeMichel*, 277 A.2d at 162 (suggesting courts can consider suppression hearing and trial evidence if the defendant reraises a suppression issue at trial); *State v. Finster*, 963 S.W.2d 414, 417 (Mo. Ct. App. 1998) (holding a court "may base its decision on evidence heard at the suppression hearing, evidence received at trial, or both").

---

[3] The Court of Appeals has long held that a trial judge must consider any foundational evidence presented at trial and may consider suppression hearing evidence only if it "is not in direct conflict with" the trial evidence. *Kelley v. State*, 825 N.E.2d 420, 426 (Ind. Ct. App. 2005). This Court has acknowledged, but never applied, this rule. *Carpenter v. State*, 18 N.E.3d 998, 1001 (Ind. 2014); *Guilmette*, 14 N.E.3d at 40 n.1; *Clark v. State*, 994 N.E.2d 252, 259 n.9 (Ind. 2013). And we need not accept or reject this rule here because there is no conflict between the suppression hearing evidence and trial evidence. Ramos-Osario insists that there is because Officer Solares did not testify at trial about seeing muzzle flashes. But the State is not required to prove constitutional compliance a second time at trial, and the mere absence of a witness at trial does not create a conflict between the suppression hearing and trial evidence.

### B. When reviewing suppression issues, appellate courts consider the evidence from both the suppression hearing and trial.

Under *Magley*, the trial judge could have summarily overruled Ramos-Osario's trial objections. Instead, she decided to reconsider the suppression issue. Although she was entitled to consider suppression hearing evidence, she did not do so. After all, she was not the judge who conducted the suppression hearing, and the parties did not make her aware of the pretrial ruling or the suppression hearing evidence. For that reason, Ramos-Osario contends this Court's review is limited to the evidence the trial judge considered—the trial evidence.

He is mistaken. We review de novo the question of whether the stop was constitutional, and we can affirm the trial court's ruling on any basis in the record. *Ramirez v. State*, 174 N.E.3d 181, 189, 190 n.2 (Ind. 2021). We are not limited to what the trial judge actually considered. Instead, when reviewing suppression issues, appellate courts, like trial courts, can consider evidence from both the suppression hearing and trial.

This conclusion is also unexceptional. Courts across the country agree that appellate courts can consider suppression hearing evidence when reviewing a trial court's decision to admit challenged evidence at trial. *See, e.g.*, *United States v. de Jesus-Rios*, 990 F.2d 672, 675 n.2 (1st Cir. 1993) (noting an appellate court's review "is not limited to" suppression hearing evidence if the defendant renews her motion to suppress at trial); *United States v. Hicks*, 978 F.2d 722, 724–25 (D.C. Cir. 1992) (explaining that, if a defendant renews the suppression issue at trial, appellate courts can consider trial evidence alongside suppression hearing evidence); *State v. Shiffermiller*, 922 N.W.2d 763, 772 (Neb. 2019) ("When a motion to suppress is denied pretrial and again during trial on renewed objection, an appellate court considers all the evidence, both from the trial and from the hearings on the motion to suppress."); *People v. Slater*, 886 N.E.2d 986, 994 (Ill. 2008) (noting appellate courts can consider suppression hearing evidence); 6 Wayne R. LaFave, Search & Seizure §§ 11.1(b), 11.7(d) (6th ed.) (explaining that when a defendant renews a motion to suppress at trial and the trial judge reconsiders the pretrial ruling, "it is customary

for the appellate court to consider all the evidence available to the trial judge," including suppression hearing and trial evidence).

The dissenting opinion takes issue with this, believing this Court's review is limited to the trial evidence because "a reviewing court may evaluate a trial judge's evidentiary ruling only on the evidence properly before the judge at the time of the ruling." *Post*, at 5. But the trial judge's ruling here implicates the exclusionary rule, which is a "judicially-created remedy" calculated to deter police misconduct, not a rule in our Rules of Evidence. *Wright*, 108 N.E.3d at 314. This is not, as the dissenting opinion suggests, like summary judgment or the sufficiency of evidence for a conviction, which are decisions on the merits of the claims. *Post*, at 2. By design, "the prophylactic exclusionary rule" has nothing to do with the merits and is instead a "deterrent sanction." *Hemphill v. New York*, 595 U.S. 140, 154 (2022) (quotations omitted). Exclusion "exacts a heavy societal cost," so the rule should be enforced only where it meaningfully advances its deterrence purpose. *Wright*, 108 N.E.3d at 316. And this purpose is not furthered by suppressing evidence that was, considering the whole record, constitutionally obtained solely because the State failed to prove constitutional compliance a second time at trial.

So here, when assessing the constitutionality of Ramos-Osario's stop, we consider Officer Solares's suppression hearing testimony, alongside the trial evidence. And as we have explained, this record makes clear that the stop did not violate the state or federal constitution. As Ramos-Osario raises no other issues, including that he does not challenge the sufficiency of the evidence supporting his conviction, we affirm his conviction.

## Conclusion

For these reasons, we affirm.


Massa and Slaughter, JJ., concur.
Rush, C.J., dissents with separate opinion, in which Goff, J., joins.

ATTORNEY FOR APPELLANT

Alexander E. Budzenski
Attorney at Law
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Ian McLean
Supervising Deputy Attorney General

Angela Sanchez
Deputy Attorney General

Caroline Gail Templeton
Deputy Attorney General
Indianapolis, Indiana

**Rush, C.J., dissenting.**

I would have denied transfer and left undisturbed the Court of Appeals' well-reasoned, unanimous opinion. Transfer having been granted, I would adopt the panel's approach and reverse because the State failed to establish at trial that police had reasonable suspicion to stop Facundo Ramos-Osario's truck.

The Court, however, reaches a different result by treating the suppression-hearing transcript and the trial evidence as one undifferentiated record. I agree that, in general, "there is nothing exceptional about this conclusion." *Ante*, at 8. But it is exceptional here because of the convergence of three circumstances: the judge who presided over the bench trial was not the same judge who presided over the suppression hearing; Officer Solares's suppression-hearing testimony was not incorporated into evidence at the bench trial; and that testimony, which the suppression-hearing judge relied on to find reasonable suspicion, was never presented to the trial judge.

Ultimately, the Court's holding expands appellate review beyond its proper bounds and weakens procedural protections that ensure constitutional questions embedded in evidentiary rulings are decided on the evidence properly before the trial judge. I therefore respectfully dissent.

# I.  Appellate review of an evidentiary ruling is limited to the evidence properly before the trial judge who made it.

This appeal implicates two related, but distinct, standards of review. We review a trial judge's evidentiary decision for an abuse of discretion. *McCoy v. State*, 193 N.E.3d 387, 390 (Ind. 2022). And a judge abuses that discretion when their ruling is clearly against the logic and effect of the facts and circumstances before them. *Id.* But whether the evidence properly before the trial judge establishes a constitutional basis for a traffic stop is a legal question we review de novo. *Id.*

Thus, de novo review permits independent review of the legal question—whether the established facts satisfy the constitutional standard. *See Ornelas v. United States*, 517 U.S. 690, 699 (1996). But it does not authorize an appellate court to supply State-favorable facts that were never presented to the trial judge, incorporated into the trial record, or considered by the trial judge when admitting the challenged evidence.

This distinction reflects how procedural posture limits appellate review. For example, when we review the sufficiency of evidence supporting a conviction, we consider only the evidence presented at trial favorable to that conviction. *See, e.g.*, *Young v. State*, 198 N.E.3d 1172, 1176 (Ind. 2022). So it would be improper to affirm a conviction based on facts contained in a probable cause affidavit that was never admitted into evidence. *See Rhone v. State*, 825 N.E.2d 1277, 1284–85 (Ind. Ct. App. 2005), *trans. denied*. Similarly, in civil matters, it would be wrong to affirm summary judgment—despite reviewing that decision de novo—by relying on materials submitted to the trial court but never designated as evidence. Ind. Trial Rule 56(H); *Zartman v. Zartman*, 127 N.E.3d 242, 245 n.2 (Ind. Ct. App. 2019), *trans. denied*. In either scenario, the facts would be in the record but outside the proper scope of appellate review.

The Court, however, takes a different path, invoking the familiar rule that we may "affirm the trial court's decision on any basis supported by the record." *Ante*, at 5 (quoting *Means v. State*, 201 N.E.3d 1158, 1163 (Ind. 2023)). That rule remains sound, but it has an important limit: an appellate court may affirm on an alternative legal theory supported by the record before the trial judge; it may not affirm on a factual foundation materially different from the one presented to that judge.

Our precedent recognizes this limit. For example, in *Ramirez v. State*, we affirmed on an alternative legal basis—exigent circumstances—that the trial court considered but did not apply. 174 N.E.3d 181, 189–91 & 190 n.2 (Ind. 2021). Indeed, we have often applied different legal theories to facts properly before the trial court. *See, e.g.*, *Ratliff v. State*, 770 N.E.2d 807, 809 (Ind. 2002); *Havert v. Caldwell*, 452 N.E.2d 154, 157 (Ind. 1983). And we have affirmed a trial court's decision when our independent review of "[t]he record before" that court confirmed it did not err. *Benham v. State*,

637 N.E.2d 133, 138 (Ind. 1994). Accordingly, we may affirm an evidentiary ruling on grounds different from those relied on by the trial judge, so long as those grounds arise from the evidence before them. *See Thornton v. Pender*, 377 N.E.2d 613, 620 (Ind. 1978). But I am unaware of any decision from this Court sanctioning what it does today: upholding a trial judge's evidentiary ruling based on a factual foundation the State never presented to the trial judge.

That is because appellate review is properly confined to the factual context of the challenged ruling. When, as here, a defendant loses a pretrial suppression motion, proceeds to trial, and renews the objection, the appeal is not a review of the judge's pretrial suppression ruling—it is a review of the judge's evidentiary ruling at trial. *See, e.g.*, *Guilmette v. State*, 14 N.E.3d 38, 40 & n.1 (Ind. 2014); *Clark v. State*, 994 N.E.2d 252, 259 (Ind. 2013). The difference "lies in the facts the trial court can consider when making its decision." *Guilmette*, 14 N.E.3d at 40 n.1. As we explained in two unanimous opinions written by my colleague, Justice Massa: "If the foundational evidence at trial is not the same as that presented at the suppression hearing, **the trial court must make its decision upon trial evidence** and may consider hearing evidence only if it does not conflict with trial evidence." *Id.* (emphasis added); *Carpenter v. State*, 18 N.E.3d 998, 1001 (Ind. 2014).

But a trial judge cannot consider suppression-hearing evidence that is never brought to their attention. Often, the same judge presides over both the suppression hearing and the trial and is therefore familiar with any uncontradicted evidence presented at the hearing. *See, e.g.*, *Guilmette*, 14 N.E.3d at 40 n.1. But not always. If a different judge presides at trial, the parties should inform that judge that the suppression issue "ha[s] been heard and determined." *Magley v. State*, 335 N.E.2d 811, 822 (Ind. 1975), *overruled on other grounds by*, *Smith v. State*, 689 N.E.2d 1238 (Ind. 1997). Problems arise, however, when neither party alerts the new judge to the prior hearing or moves to incorporate the hearing evidence into the trial record. In those circumstances, the suppression-hearing evidence and ruling are not "before the court" when it rules on admissibility because the trial judge has no basis to know they exist. And so, when reviewing such a ruling, we should not consider uncontradicted suppression-hearing

evidence because abuse-of-discretion review is confined to the facts and circumstances before the judge who made the ruling.

These rules are not mere formalism. They preserve the trial judge's role and give meaning to the contemporaneous-objection requirement. A pretrial motion to suppress does not preserve the issue for appeal; the defendant must object when the evidence is offered at trial. Ind. Crim. Rule 2.7(B). This contemporaneous-objection requirement gives the trial judge "the opportunity to make a final ruling on the matter in the context in which the evidence is introduced." *Jackson v. State*, 735 N.E.2d 1146, 1152 (Ind. 2000). And it reflects "the nature of a motion to suppress," which "is not intended to serve as the final expression concerning admissibility." *Gajdos v. State*, 462 N.E.2d 1017, 1022 (Ind. 1984). Indeed, we have expressly rejected the argument that a pretrial suppression ruling remains "effective and unchanged throughout the trial." *Id.*

The Court's holding unsettles these foundational procedural principles. If appellate courts may automatically combine suppression-hearing testimony with trial evidence whenever the embedded question is constitutional, then a renewed trial objection does little work. Going forward, the State can fail to lay the necessary foundation at trial, the trial judge can admit the evidence without that foundation, and the appellate court can cure the defect by crediting testimony from an earlier proceeding that was never presented to the trial judge. That is not review of a trial ruling; it is appellate reconstruction.

*Magley* does not justify that reconstruction. There, we explained that when a defendant raises only a simple trial objection to preserve a previously litigated suppression issue, the trial judge may treat the pretrial ruling as "*res judicata* and binding" unless the defendant identifies new factual or legal matter. *Magley*, 335 N.E.2d at 821. But we later clarified that this "reference to *res judicata*" was not meant literally and that a preliminary suppression ruling remains "subject to modification at trial." *Joyner v. State*, 678 N.E.2d 386, 392–93 (Ind. 1997). Even then, *Magley* presupposed that the trial judge was aware of the original basis for ruling on the motion to suppress and would, therefore, "expect" or "require . . . an accurate summary description of" any new evidence or legal argument

before ruling on the trial objection. 335 N.E.2d at 821. And ruling on the trial objection becomes more complicated when one judge presides over the suppression hearing and another presides at trial because "[t]he trial judge is not acquainted with the evidence presented in the pre-trial hearing" and is therefore "unable to weigh the old evidence with the new." *Id.* Under these circumstances, *Magley* itself contemplates "re-litigation of the motion to suppress" at trial. *Id.* at 821–22.

Those concerns are present here. The judge who presided over the bench trial did not preside over the suppression hearing. Officer Solares, whose suppression-hearing testimony supplied the critical facts supporting reasonable suspicion, did not testify at trial. The State neither informed the trial judge that the suppression issue had already been resolved nor asked the judge to incorporate Officer Solares's suppression-hearing testimony, take judicial notice of it, or otherwise rely on the pretrial transcript. And when Officer Hester attempted to testify at trial about what Officer Solares had observed, the trial judge sustained Ramos-Osario's objection. In short, the trial judge was never asked to decide admissibility based on Officer Solares's suppression-hearing testimony. Yet the Court supplies on appeal what the State failed to provide at trial.

This result cannot be squared with more than forty years of our precedent. The Court discounts *Carpenter*, *Guilmette*, and *Clark* as merely "acknowledg[ing], but never appl[ying]" the rule that trial judges must assess admissibility based on trial evidence while permitting consideration of uncontradicted suppression-hearing evidence. *Ante*, at 10 n.3. But those cases reinforce the framework governing review of evidentiary rulings after renewed objections at trial. They follow *Jackson*, *Joyner*, and *Gajdos* to their logical conclusion: because admissibility remains unsettled until the State lays a proper foundation at trial, a reviewing court may evaluate a trial judge's evidentiary ruling only on the evidence properly before the judge at the time of the ruling. Yet today's decision does not meaningfully address *Jackson* or *Gajdos*. Nor does it acknowledge how, read together, *Joyner* and *Magley* support "re-litigation of the motion to suppress" when the parties do not present the trial judge with the suppression-hearing evidence either directly or through incorporation. *Magley*, 335 N.E.2d at 821–22; *Joyner*, 678 N.E.2d at 393. As a

result, the Court overlooks our consistent treatment of appeals challenging evidentiary rulings at trial following motions to suppress and fails to confront how today's decision disrupts the established role of a motion to suppress. I would continue to apply the rule as we have consistently articulated it.

And to the extent the Court invokes the exclusionary rule to expand the record we may review, *see ante*, at 9, that remedial policy cannot alter the threshold limits on appellate review. The exclusionary rule bears on the remedy after a constitutional violation is established; it does not determine the record we may consult to decide whether there was one. The proper three-step sequence matters. We first identify the facts properly before the trial judge. Then, based on those facts, we determine whether the State established the stop's constitutionality. And if the State failed to make that showing, we turn to the proper remedy. The Court instead skips the threshold question, decides constitutionality on an expanded record, and then uses that constitutional conclusion to justify the expansion. I cannot join that inversion—putting the constitutional cart before the standard-of-review horse.

In short, the trial judge was never presented with any suppression-hearing evidence, either directly or by incorporation. We therefore cannot assess whether the judge abused her discretion by relying on facts that were never properly before her. The correct inquiry, then, is whether the State established the constitutionality of the traffic stop using only the foundational evidence presented at the bench trial. It did not.

## II. The State failed to establish reasonable suspicion for the traffic stop at trial.

Both the Fourth Amendment and Article 1, Section 11 of the Indiana Constitution require an investigatory stop to rest on reasonable suspicion. *Campos v. State*, 885 N.E.2d 590, 596–97 (Ind. 2008). Reasonable suspicion exists when articulable facts known to the officer, together with reasonable inferences from those facts, indicate that criminal activity has occurred or is about to occur. *Clark*, 994 N.E.2d at 263–64. Thus, an

officer's inchoate suspicion or unparticularized belief is not enough. *See Terry v. Ohio*, 392 U.S. 1, 21–22, 27 (1968).

At the suppression hearing, Officer Solares testified that he heard gunshots, saw a black truck traveling northbound, saw muzzle flashes as the truck passed, heard the shots sound closest when the truck was in front of him, and saw no other vehicles on the road. The suppression-hearing judge relied heavily on that testimony—especially the muzzle flashes—in denying Ramos-Osario's motion.

But a different judge heard evidence at the bench trial. There, neither party mentioned the suppression hearing, and Officer Solares did not testify. Instead, Officer Hester testified that Officer Solares initiated the stop and that he assisted. Ramos-Osario objected, arguing that the State had not laid a constitutional foundation for the stop. And the trial judge initially agreed, sustaining his objection and telling the State it needed to rethink its questions. The State then elicited testimony that the high-risk stop was for an investigation of shots fired, that Officer Hester personally heard gunshots, and that he heard Officer Solares say over the radio that a truck traveling northbound on Harding Street was believed to be involved. But Officer Hester did not testify to facts establishing why that truck was believed to be involved.

In truth, Officer Hester's trial testimony undercut reasonable suspicion. He explained that gunshots are hard to pinpoint unless one can see someone shooting. He did not know where the shots came from. And when the court asked what made him think this particular vehicle may have been associated with the gunshots, he answered, "I didn't think it was." That testimony does not supply objective, particularized suspicion that Ramos-Osario, or the truck he was driving, was involved in criminal activity. Without Officer Solares's suppression-hearing testimony about seeing muzzle flashes and hearing the shots growing louder as the truck approached, the record properly before the trial judge contains no particularized link between Ramos-Osario's truck and the gunfire.

The Fourth Amendment therefore does not permit the stop. Gunfire may justify an urgent police response. And an officer need not rule out every innocent explanation before making a *Terry* stop. But reasonable

suspicion still requires a particularized basis for suspecting the stopped person or vehicle. On this record, the State showed only that officers heard gunshots and that Ramos-Osario's truck was in the area. That is not enough under the Fourth Amendment.

The same is true under Article 1, Section 11. Under this provision, we consider the totality of the circumstances, balancing the degree of concern, suspicion, or knowledge that a violation occurred; the degree of intrusion imposed by the seizure; and the extent of law-enforcement needs. *Litchfield v. State*, 824 N.E.2d 356, 359, 361 (Ind. 2005). I agree with the Court that law enforcement had a strong interest in investigating gunfire and that this stop imposed a greater intrusion on Ramos-Osario than a routine traffic stop. *See ante*, at 6. But on the record properly before the trial judge, the degree of suspicion connecting Ramos-Osario's truck to the gunshots was slight at best. Balancing the *Litchfield* factors, I would hold the stop unreasonable under Article 1, Section 11 as well.

Because the State failed to establish the stop's constitutionality at trial, the trial court abused its discretion by admitting evidence obtained from the stop. And because that evidence was the only evidence supporting Ramos-Osario's conviction, I would reverse.

I acknowledge that reversal may seem unwarranted in light of Officer Solares's suppression-hearing testimony. But procedural protections matter most when they affect outcomes. The State bears the burden to establish the constitutional foundation for an investigatory stop. And an appellate court must review trial rulings based on the evidence properly before the trial judge when those rulings were made. Because the Court's decision departs from both principles, I respectfully dissent.

Goff, J., joins.